IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GRACE OWENS, | § | |
| | § | |
|    *Plaintiff*, | § | |
| | § | |
| vs. | § | Civil Action 3:19-cv-02231-M |
| | § | |
| CIRCASSIA PHARMACEUTICALS INC., | § | |
| | § | |
|    *Defendant*. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**TO THE HONORABLE BARBARA M. G. LYNN:**

Plaintiff Grace Owens presents her Second Amended Complaint based on whistleblower, discrimination, and retaliation claims against Circassia Pharmaceuticals Inc.

## Parties

1. Grace Owens is a citizen of the United States, residing in Dallas County, Texas.

2. Circassia Pharmaceuticals Inc. is a Delaware corporation who has appeared in this case and service of process is not necessary.

## Jurisdiction and Venue

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. This is a whistleblower, discrimination, and retaliation case under 42 U.S. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. The Court has pendent jurisdiction of whistleblower, discrimination, and retaliation claims under Cal. Gov't Code § 12940 and Cal. Labor Code §1102.5. Venue is appropriate and

*Plaintiff's Second Amended Complaint*                                                            *Page 1*

proper in the Central District of California because the events made the basis of this suit occurred in Orange County, California.

## Background Facts

4. Circassia sells medical products to physicians and hospitals, including federal hospitals, such as VA hospitals and Department of Defense medical facilities. It is a British company with headquarters in the U.S. in Raleigh, North Carolina.

5. Circassia sells medical products to physicians and hospitals, including federal hospitals such as VA hospitals and Department of Defense medical facilities. Circassia has hundreds of employees.

6. Circassia buys and takes over another medical products company, Aerocrine, who has a sales manager named Grace Owens. She is a Filipino-American woman in her 50s.

7. Ms. Owens began employment as a sales person in 2010 with the company that was purchased and had been promoted to a regional sales manager in 2013. She managed a sales region in the U.S. with several sales persons working under her, including some based in California.

8. Circassia purchases Aerocrine in June 2015.

9. Circassia continues to use all of the sales managers and salespersons after the purchase of Aerocrine, including Ms. Owens as a sales manager and her sales team, and operates under the name Circassia rather than Aerocrine.

10. Ms. Owens and her sales team are recognized as top performers and as a top revenue producing region, with good performance reviews.

11. Scott Casey is Ms. Owens' supervisor. He is Circassia's Area Sales Director for the Western U.S. Mr. Casey is a white male and directs Ms. Owens' employment from his home in Orange County, California. He conducts weekly conference calls with his sales managers, including Ms. Owens, from California, and emails her daily, from California, during the time she reports to him.

12. The team managed by Ms. Owens is consistently among the highest performing teams at Circassia.

13. Circassia refuses to promote Ms. Owens, a top sales manager, to the Director position.

14. In May 2018, Ms. Owens expresses concern about the ethical or legal pricing of products to a particular key account, a key account in Tennessee.

15. From California, Mr. Casey asks Ms. Owens why she is working when her husband is in a good profession, and questions why one of the women on her sales team works when her husband also has a good job.

16. On February 1, 2018, Ms. Owens has a telephone call with her region's key account director, Mr. Chili Hill.

17. Mr. Hill is upset about Ms. Owens copying her team on an email about a list of target accounts.

18. Ms. Owens immediately reports to her supervisor in California, Mr. Casey, that Mr. Hill treated her inappropriately in her telephone call when Mr. Hill raised his voice and accused her of underperforming.

19. Ms. Owens stated in the conversation with Mr. Casey that she has one of the top performing regions and that several of the persons on her sales team have won top awards.

20. Ms. Owens reports to Mr. Casey that Mr. Hill treated Ms. Owens' female sales persons in the same manner, including making sexist comments.

21. On February 21, 2018, Circassia's Human Resources Director meets with Ms. Owens to discuss her allegations that Mr. Hill had been verbally abusive to her and to two of her sales persons.

22. Mr. Casey, working from California, summons Ms. Owens to California under the pretense of wanting to review her territories. Ms. Owens prepares extensively for the review of her territories. However, when Ms. Owens arrives in California on April 11, 2018, Mr. Casey places Ms. Owens on a performance improvement plan for the next 60 days from April 11, 2018, for, allegedly, not developing her team adequately and for lack of communication with her manager. He does not discuss any review of her territories.

23. Mr. Casey presented the performance improvement plan to Ms. Owens in person, at a hotel near his home in Orange County, California.

24. On April 18, 2018, Ms. Owens objects to the performance improvement plan and complains that she was being retaliated against for complaining about Mr.

Hill. Ms. Owens also claimed that she was being discriminated against because of her age, gender, and race.

25. Ms. Owens also complains that she had been passed over twice for a promotion in 2016. She complains that male regional sales managers were invited to attend several national conferences but that she was not invited to them. She was the only female reporting to Mr. Casey at the time.

26. Mr. Casey selected regional sales managers to attend work-related conferences. Mr. Casey routinely passed over Ms. Owens when selecting sales managers to attend conferences. The conferences were related to asthma, the condition addressed by the product Ms. Owens' team sold to practitioners. Missing conferences was not just an insult or slight; it also affected her ability to make contacts and sales. Mr. Casey made these selections and chose not to select Ms. Owens from his home office in California. A white male was typically selected, over Ms. Owens, to attend the conferences.

27. In late May 2018, while Ms. Owens was working under the performance improvement plan, Mr. Casey, from California, ordered Ms. Owens to provide a detailed personnel review of each of her 12 representatives the following day. He made the unreasonable request late in the day knowing that completing the evaluations for each of her reports by the following day would be impossible.

28. Ms. Owens protested the last-minute assignment and told Mr. Casey it amounted to continued discrimination and harassment against her. Mr. Casey withdrew the request.

29. Circassia treat persons similarly situated to Ms. Owens who are male and who are not Filipino-American differently.

30. On April 25, 2018, the Human Resources Director informs Ms. Owens that her complaints have been investigated and found to be unsubstantiated.

31. Ms. Owens responds that Circassia did not investigate because, among other things, the persons on her team were not interviewed.

32. On May 10, 2018, Circassia offers Ms. Owens a four-month severance package. Ms. Owens declines the severance package and questions whether the investigation by the Human Resources Director was adequate.

33. On May 31, 2018, Ms. Owens emails Circassia's Director of Compliance for the U.S. about concerns over unfair pricing by Circassia that might be a violation of federal law, and that part of the fourth quarter of 2017 was excluded from her region's yearly performance.

34. Ms. Owens requests another investigation of the retaliation and discrimination claims she had made.

35. On June 7, 2018, one week after Ms. Owens reported pricing violations, Mr. Casey, in California, calls Ms. Owens and terminates her employment.

36. Circassia replaces Ms. Owens with a male who is not a Filipino-American.

37. Mr. Casey, managing Ms. Owens from California, performed Ms. Owens' performance reviews, made the decision to place Ms. Owens on a

performance improvement plan, and made the decision to terminate Ms. Owens's employment. Mr. Casey presented Ms. Owens' mid-year 2017 performance review to her in person, in California; informed Ms. Owens of and presented her performance improvement plan to her in person, in California; and called Ms. Owens from California to inform her of his decision to terminate her employment.

38. Personnel records and performance records, including records related to Ms. Owens, are maintained in California. These may include electronic, as well as paper, records.

39. The unfair and unethical pricing violation affects not just Ms. Owens' territories. It affects existing accounts in California, as well as potential accounts, physicians, and patients.

40. California is likely the most impacted state in the nation by the pricing issues because Medi-Cal (the major Medicaid provider for the state of California) had no coverage for the NIOX test. California is one of about 10 states that did not cover the test under its Medicaid program.

41. Major key accounts of Circassia, with pricing contracts, include Vizient. Vizient is the largest national Group Purchasing Organization (GPO) that contracts with certain pharmaceutical device companies to negotiate pricing for products for their members. Many members under Vizient join the GPO in order to have the lowest negotiated contracts and product pricing.

42. Kaiser Permanente is the largest healthcare provider in the state of California. Kaiser's pricing for Circassia product NIOX fell under the Vizient contract. Kaiser is perhaps Vizient's largest healthcare provider member.

43. Circassia's NIOX products are used to diagnose asthma and assist asthma management.

44. The Vizient contract with Circassia did not provide the lowest pricing for NIOX compared to other customers (including practice groups in Tennessee). As a result, those patients under Kaiser and Vizient as a whole (in addition to the Kaiser accounts themselves) that were not provided the healthcare benefit of the NIOX test because of higher pricing than others, are the ones most impacted in the state of California.

45. Greg Ferrell is a Key Account Director in California and covers the West Coast. Circassia's Key Account Team was in charge of pricing and pricing contracts under the direction of Suzanne Monahan, Director of Key Accounts, at the time. Mr. Ferrell resides in California and is a key witness regarding the pricing contracts.

46. A witness to sex discrimination and harassment by Mr. Casey that occurred in California resides in California as well. Upon information and belief, other witnesses to sex discrimination and harassment by Mr. Casey that occurred in California reside in California also.

47. California has many patients that could have benefited from the test under Medi-Cal (predominantly children suffering from asthma). If the lower

pricing had been offered in California, more physicians and individual practices could have been able to afford the test and provide it for their patients.

## Causes of Action

**Wrongful Termination under California Law**

48.     Under California Labor Code §1102.5, an employer shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

49.     California Labor Code §1102.5 also provides that an employer shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or

noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

50. Further, California Labor Code §1102.5 provides that an employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

51. Where the employer's motivation for a discharge contravenes some substantial public policy principle, the employer may be liable to the employee for damages occasioned by the discharge. *Tameny v. Atl. Richfield Co.,* 27 Cal. 3d 167, 610 P.2d 1330 (1980).

52. To sustain a claim of wrongful discharge in violation of fundamental public policy, a plaintiff must prove that her dismissal violated a policy because it was occasioned by the plaintiff's report of an alleged violation of a statute of public importance. *Turner v. Anheuser-Busch, Inc.,* 7 Cal. 4th 1238, 1256, 876 P.2d 1022 (1994).

53. The employee need not prove that the alleged improper conduct was actually unlawful, but that the employee had "reasonably based suspicions" of illegal activity. *Green v. Ralee Eng'g Co.,* 19 Cal. 4th 66, 78 Cal. Rptr. 2d 16, 960 P.2d 1046, 1059 (1998).

54. There is a strong public policy interest in disclosing and preventing theft as articulated in California Penal Code § 484 (providing "Every person who …

shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property ... is guilty of theft.") and disclosing and preventing fraud as articulated in Cal. Civ. Code § 1572 (providing, "Actual fraud, within the meaning of this Chapter, consists in any of the following acts, committed by a party to the contract, or with his connivance, with intent to deceive another party thereto, or to induce him to enter into the contract.").

55. California courts have long held that when an employer discharges an employee who refuses to defraud a customer, the employer has violated a fundamental public policy and may be liable in tort for wrongful discharge.

56. Ms. Owens' disclosures and refusals to violate the law were protected conduct in that she sought to prevent Circassia from defrauding a customer or customers.

57. Ms. Owens suffered an adverse action when Circassia harassed her, placed her on a performance improvement plan, and terminated her employment. Circassia's stated reason for terminating Ms. Owens, because of her performance, is false and is mere pretext for Circassia's wrongful termination of Ms. Owens.

58. As a direct and proximate result of Circassia's conduct as alleged herein, Ms. Owens has suffered, and will continue to suffer loss of income and fringe benefits in an amount to be determined at trial. Circassia's conduct as alleged herein further proximately caused Ms. Owens to suffer emotional distress and mental anxiety in an amount to be determined at trial.

59. The conduct of Circassia as described herein was oppressive, fraudulent and malicious, done in conscious disregard of, and reckless indifference to, Ms. Owens' rights. Ms. Owens is thereby entitled to an award of punitive damages against Circassia in an amount appropriate to punish and make an example of Circassia.

**Discrimination**

60. Ms. Owens timely filed an administrative charge with the California Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission (EEOC). Ms. Owens exhausted her administrative remedies with the DFEH and EEOC and received a notice of right to sue from both entities.

61. Circassia has well over 15 employees and therefore qualifies as an employer under both Title VII and the California FEHA.

62. Circassia created a hostile environment and terminated Ms. Owens' employment because of her sex, race, and national origin in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Cal. Gov't Code § 12940.

63. An employer may not discharge or otherwise discriminate against an employee because of her race under 42 U.S.C. § 1981.

64. An employer may not discharge or otherwise discriminate against an employee because of her sex, race, or national origin under 42 U.S.C. § 2000e-2(a)(1) and Cal. Gov't Code § 12940.

65. An employer also may not limit, segregate, or classify employees in any way which would deprive an employee of employment opportunities or otherwise adversely affect her status as an employee, because of the employee's sex, race, or national origin under 42 U.S.C § 2000e-2(a)(2)and Cal. Gov't Code § 12940.

66. The effect of the policies and practices pursued by Circassia has been and continues to limit, classify, and discriminate against employees in ways which jeopardize their jobs, deprive them of their employment opportunities, and otherwise adversely affect their status as employees because of their gender, race, and national origin.

**Retaliation**

67. Ms. Owens timely filed an administrative charge with the DFEH and the EEOC. Ms. Owens exhausted her administrative remedies with the DFEH and EEOC and received a notice of right to sue from both entities.

68. Circassia treated Ms. Owens adversely because she reported and opposed unlawful discrimination and retaliation and because she filed an EEOC charge and participated in an investigation of discrimination and retaliation claims.

69. Circassia's actions violate 42 U.S.C. § 1981, Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and Cal. Gov't Code § 12940, which prohibit retaliation against any person because the person has opposed any practices forbidden under Section 1981, Title VII, or Section 12940 of the California Government Code or because the person has filed a complaint, testified, or assisted in any proceeding under Title VII or Section 12940 of the California Government Code.

70. The retaliation motivated Circassia's continuing harassment, hostile environment, and termination of Ms. Owen's employment.

71. The actions were knowing and intentional violations of Section 1981, Title VII, and the California Labor Code.

**Damages for Discrimination and Retaliation**

72. The acts, patterns, practices, and policies of Circassia caused and continue to cause damage to Ms. Owens in the form of back pay, interest on back pay, front pay, lost benefits and other compensatory or punitive damages, including attorneys' fees, to which she is entitled under Section 1981, Title VII, and the California Labor Code.

73. Ms. Owens is entitled to a declaratory judgment, declaring Circassia's past practices herein complained of to be in violation of Sections 1981, Title VII, and the California Labor Code in the form of an injunction prohibiting Defendants from engaging in unlawful employment practices; to reinstate Ms. Owens to her previous position with any back pay that may occur.

**Attorneys' Fees**

74. Ms. Owens was required to retain the services of the undersigned attorneys to prosecute the cause. Under Section 1981, Title VII, the California Labor Code, and the California Government Code. Ms. Owens is entitled to a reasonable amount for attorneys' fees and expenses for all services rendered in this cause, including trials and appeals.

**JURY DEMAND**

75. Ms. Owens requests a trial by jury.

WHEREFORE, Ms. Owens requests that Circassia answer and that on final trial, Ms. Owens have judgment against it for compensatory, declaratory, equitable, and exemplary damages, attorneys' fees and expert fees, costs of suit, and interest as provided by law, and any further relief to which she may be entitled.

Respectfully submitted,

/s/ Brian P. Sanford
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com
David B. Norris
Texas Bar No. 24060934
dnorris@sanfordfirm.com
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com

THE SANFORD FIRM
1910 Pacific Ave., Suite 15400
Dallas, TX 75201
Ph: (214) 717-6653
Fax: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF GRACE OWENS**

### CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2020, I electronically served the foregoing document on all counsel of record via the Court's electronic filing system.

/s/ Brian P. Sanford